[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE
This suit was brought on behalf of two minor children, Mark and Adam. One of the defendants, Dr. Blefeld, is sued in three counts. In the first two counts, each of the children have sued the doctor in "negligence and negligence per se." The counts basically allege that, despite several opportunities to observe the children during office visits, as a "mandated reporter" under § 17a-101 (b) of the General Statutes, Dr. Blefeld failed to report "serious physical abuse" of the children which was or should have been obvious."
The third count against the doctor lies in medical malpractice and CT Page 5375 states he treated the child Mark "on several occasions including but not limited to 11/16/92, 12/8/92, 3/30/93, 9/23/94 and 5/28/95." The allegations are that in so treating the child the doctor deviated from the standard of care by failing to diagnose and treat a medical condition the child suffered from and failed to supervise employees who, if they had been properly supervised, would not have failed to discover this condition.
The defendant doctor has filed a motion to strike against these three counts. The basic claim is that "the plaintiffs failed to attach a good faith certificate to the complaint as required by Connecticut General Statutes § 52-190a." Therefore, it is argued these counts are subject to a motion to strike, Gabrielle v. Hospital of St. Raphael,33 Conn. App. 378, 384 (1994).
The standards to be applied on a motion to strike are well recognized. Every reasonable inference should be given to the pleading, here, the complaint, which is the subject of the motion, Amodio v. Cunningham,182 Conn. 80 (1980).
It is also true that a motion to strike, just like the demurrer, if it is directed at the entire pleading, must fail if any one of the plaintiffs claims are legally sufficient. Rossignol v. Danbury School ofAeronautics, 154 Conn. 549, 552 (1967); Doyle v. A P Realty Corp.,36 Conn. Sup. 126 (1980). This also means if a single count sets out more than one allegation, it cannot be stricken as long as one of the claims is legally sufficient even if other claims do not meet that test, seeRossignol, cf. Cashman v. Meriden Hospital, 117 Conn. 585, 586 (1933).
The court will first discuss the motion to strike as it is directed against the first and second counts. Then the court will discuss the motion as it is aimed at the third count.
 (1)
The first two counts sound in "negligence and negligence per se" and are based on an alleged violation of §§ 17a-101 et seq. of the general statutes. Subsection (b) of § 17a-101 defines certain classes of people, such as physicians like Dr. Blefeld, as "mandated reporters[1]."
Section 17a-101a requires that a mandated reporter "who, in his (her) professional capacity has reasonable cause to suspect or believe that any child under the age of eighteen years has been abused, as defined in § 46b-120, or has had non-accidental physical injury . . . inflicted upon him by a person responsible for such child's health, welfare or CT Page 5376 care. . . or has been neglected, as defined in § 46b-120, shall report or cause a report to be made in accordance with the provisions of §§ 17a-101b to 17-101d inclusive." The latter statutory sections require the foregoing information to be reported in various ways to law enforcement or the Commissioner of Children and Families.
Section 46b-120 defines "abused" by saying the word means that a child or youth (A) has been inflicted with physical injury or injuries other than by accidental means . ., or (C) is in a condition which is the result of maltreatment such as, but not limited to, malnutrition . . . deprivation of necessities. A "neglected" child is a child who . . . " (B) is being denied proper care and attention, physically, . . . or (C) is being permitted to live under conditions, circumstances . . . injurious to the well-being of the child or youth or (D) has been abused."
The second revised complaint alleges the following in the first count as to the child
Mark:
 "5. Plaintiff Mark Geising was the victim of severe physical abuse suffered at the hands of his mother and her then boyfriend and current husband, Mr. Douglas Scully. Said physical abuse was obvious and was known or should have been known to defendant Blefeld.
 6. Defendant Blefeld is a mandated reporter as defined by Connecticut General Statutes § 17a-101 (b). Defendant Blefeld failed to report the instances of abuse he observed including bruises and lacerations on Mark's body and failure to thrive evidenced in the record by lack of weight gain."
The second count is brought on behalf of the child Adam in paragraph 5 alleges the child was the victim of "severe physical abuse" at the hands of the same two individuals referred to in count one and states the defendant doctor knew or should have known of the abuse which "was obvious." Paragraph 6 alleges the doctor was a mandated reporter but "failed to report the instances of abuse he observed including bruises and lacerations on Adam's body."
The question presented is whether, given these allegations, a medical malpractice claim is presented so that a so-called "good faith certificate" is required. CT Page 5377
It is not disputed that a "good faith certificate" was not filed as to counts one and two as set forth in § 52-190a of the General Statutes. That statute reads as follows:
 § 52-190a. Prior reasonable inquiry and certificate of good faith required in negligence action against health care provider.
 (a) No civil action shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or part filing the action has made a reasonable inquiry as permitted by the circumstances to that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint or initial pleading shall contain a certificate, on a form prescribed by the rules of the superior court of the attorney or party filing the action that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant. For purposes of this section, such written opinion, which shall not be subject to discovery by any party except for questioning the validity of the certificate, of a similar health care provider as defined in § 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence. In addition to such written opinion, the court may consider other factors with regard to the existence of good faith. If the court determines after the completion of discovery, that such certificate was not made in good faith and that no justifiable issue was presented against a health care provider that fully cooperated in providing informal discovery, the court upon motion or upon its own initiative, shall impose upon the person who signed such certificate, a represented party or both an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred by the one filing of the pleading, motion or other paper, including a reasonable attorney's fee. The court may also submit the matter to the CT Page 5378 appropriate authority for disciplinary review of the attorney if the claimant's attorney submitted the certificate . . .
(b). . . ."
The defendant argues that the plaintiffs failed to file such a certificate although they were required to do so. If that is the case, a motion to strike should be sustained against the first two counts which allege a tort against a healthcare provider, a physician.[2]
The defendant cites the case of Trimel v. Lawrence MemorialHospital, 61 Conn. App. 353 (2001), which held that the plaintiffs negligence claim sounded in medical malpractice and thus required the filing of a good faith certificate under § 52-190a. The Trimel court relied on language in Santopietro v. New Haven, 239 Conn. 207, 226
(1996), which said: "Professional negligence or malpractice . . . is defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss or damage to the recipient of those services." Camposano v. Claiborn, 2 Conn. Cir. Ct. 135, 136-137 (1963), was also cited to the effect that malpractice "presupposes some improper conduct in the treatment or skill or . . . the failure to exercise requisite medical skill." From these observations, Trimel went on to say that "the relevant considerations in determining whether a claim sounds in medical malpractice are whether (1) the defendants are sued in their capacities as medical professionals, (2) the alleged negligence is of a specialized medical nature that arises out of the medical professional-patient relationship, and (3) the alleged negligence is substantially related to medical diagnosis or treatment and involved the exercise of medical judgment."
The defendant argues that both counts in effect allege professional negligence or malpractice. They both state the defendant had a duty to report the abuse due to his position as a physician, he is being sued in that capacity and "the alleged negligence arises out of the doctor-patient relationship and . . . is substantially related to medical diagnosis and involves the exercise of medical judgment."
The court will address the second count and then the first count. The second count says that the doctor "failed to report instances of abuse he observed including bruises and lacerations." As noted, § 17a-101a
defines the duties of mandated reporters and the ambit of that duty requires reporting where the reporter in his professional capacity has reasonable cause to suspect or believe "that a child" has been abused as CT Page 5379 defined in § 46b-120 or has had non-accidental physical injury; " Section 46b-120 talks of an abused child as a child "inflicted with physical injury or injuries other than by accidental means."
"Bruises" and "lacerations" are physical injuries and, giving the complaint every favorable inference, do not necessarily require medical training and skill to be recognized for what they are or even to provide an observer with reasonable cause to believe or suspect that such injuries have been inflicted on the child or may be the product of non-accidental infliction. To paraphrase Badrigian v. ElmerestPsychiatric Institute, 6 Conn. App. 383, 387 (1986), as the trier of fact one need not resort to medical experts to determine that a child exibiting bruises and lacerations is or may be the subject of abuse.
That this is so is further supported by the legislature having put mandatory reporting requirements, which carry civil and criminal penalties, on classes of people who either do not have or are not likely to have medical training and experiences and whose judgment on abuse would not be subjected to the standard of care requirements in malpractice cases — thus, teachers and principals, school paraprofessionals, social workers, police, clergy and day care providers are mandated reporters as well as they should be.
The court is aware of the fact that in this upsetting area there is a certain medical expertise which purports to be able to diagnose certain injuries as being the result not of accident but of intentional actions due to the pattern of injuries, their frequency, location, appearance, etc. But this is a motion to strike and the court is obligated to give the complaint every favorable inference. This is not to say that the issue cannot be revisited at a later time if discovery makes it clear that expert testimony and expert observations just mentioned of this type will be involved in this case or that the plaintiff will seek to rely on special skills possessed by a physician to establish that the injuries inflicted were, in fact, not accidental or that the nature of the injuries were such that they should have given a physician as opposed to a layperson reason to suspect they were intentionally inflicted. After all, Trimel itself was not decided in a motion to strike posture; the appellate court upheld the granting of a summary judgment motion by a trial court that held its granting would be appropriate in light of the failure to file a good faith certificate. At this point, however, based on a reading of the complaint the court cannot say that the plaintiffs theory of the case as set forth in the second count so clearly rests on a professional negligence approach that the policy reasons behind §52-190a — to prevent frivolous claims of malpractice, LaConche v.Elligers, 215 Conn. 701, 710 (1991) — require that this motion be granted as to count two. Therefore, the court will deny the motion to CT Page 5380 strike directed to count two.
The first count presents the more difficult problem in the sense that it also presents a viable claim lying in negligence which does not necessarily raise an issue of medical practice — bruises and lacerations on this child also — but also alleges as evidence of abuse the fact that the child "failed to thrive evidenced in the record by lack of weight gain." Such an allegation falls within the definition of abused child in § 46b-120, where it says such a child may be in a condition resulting from "maltreatment such as but not limited to malnutrition . ., deprivation of necessities." The problem is that this latter finding especially if it is sought to be supported by evidence of lack of weight gain would seem to require expert testimony or call on the special skills of a physician to reach the necessary conclusion of malnutrition and perhaps whether, as to this child, lack of weight gain has medical significance on the question of malnutrition. But despite this, a motion to strike would not be appropriate since a portion of the claim in the first count — allegation of bruises and lacerations — is viable as a "negligence" claim without necessarily being characterized as a professional negligence claim requiring a § 52-190a
certificate. The court will not grant the motion to strike the first count. However, counsel on both sides might be well advised to bring this matter before the court prior to trial or at the conclusion of discovery by way of a motion in limine or a motion for summary judgment or to dismiss.
In other words, the legislature has clearly expressed a policy in § 52-190a that good faith certificates be filed in medical malpractice actions. LeConche left open the possibility of granting a motion to dismiss where a false certificate was filed, 215 Conn. at p. 712, and cited cases from other jurisdictions with statutes like ours which seem to permit motions to dismiss with leave to amend where certificates that ought to have been filed were not attached to the complaint, Nash v. Humana Sun Bay Community Hospital, et al,526 So.2d 1036, 1039 (Fla., 1988); Santangelo v. Ruskin, 528 N.Y.S.2d 90,93 (1988); cf. McCastle v. Sheinkopf, 520 N.E.2d 293 (Ill., 1987).Trimel itself was a case where the court granted a motion for summary judgment for failure to provide a necessary certificate. It is not a far step from decisions like this to hold, for example, that where any evidence going to malpractice is attempted to be introduced at trial under a count such as the first and even second count here and as to that count no certificate was filed, and the failure to do so could not be properly tested by a motion to strike, that such evidence should not be permitted at trial. How else is the will of the legislature, as expressed in § 52-190a, to be enforced where at the time the motion to strike is filed discovery is not completed so that it is unclear whether some CT Page 5381 claims being made in a particular count (first count) or some aspects of a claim (second count) will require expert evidence of medical malpractice?
In any event, for the reasons stated, the court will not strike the first or second count.
 (2)
The court will now discuss the motion as it relates to count three. The third count alleges that Dr. Blefeld and his supervised staff failed to diagnose and treat a certain medical condition of the child. A good faith certificate was in fact filed here on February 24, 2000 as to the third count but the defendant claims it is "factually inadequate to be considered proper compliance with § 52-190a." Reasonable inquiry is required under the statute. The certificate indicates inquiry was made into the doctor's treatment on September 24 and October 10 of 1995, but these dates do not match the dates of treatment set forth in the third count. In fact, count five states that in treating the child Mark "on several occasions including but not limited to 11/16/92, 12/8/92, 3/30/93, 9/23/94 and 5/28/97, "[the defendant] deviated from the appropriate standard of care" — and then those deviations are listed. But the letter attached to the certificate indicates that an identified doctor who is board certified in pediatrics examined the child's medical records and determined that he suffers from a condition "which should have been detected and diagnosed during any number of wellchild visits with Dr. Blefeld." (Emphasis added.) The letter goes on to explain the deleterious consequences which can result from a failure to diagnose such a condition.
The court cannot say based especially on the letter that there is a lack of good faith here. If anything, the actual certificate to which the doctor's letter is attached, was inartfully drawn and should be corrected as to dates to reflect the accurate "good faith" conclusions which were or could be expected to be drawn from Dr. McCauley's opinion letter. Without more than now appears to be the case, a motion to strike is not in order and in any event would require the court to go outside the record to establish whether or not there is a good faith problem; the court cannot do this on a motion to strike. The motion to strike count three is also denied.
Corradino, J.